## Case No. 16,106.

### UNITED STATES v. QUANTITY OF TOBACCO.

[6 Ben. 68.][1]

District Court, S. D. New York. May, 1872.[2]

INTERNAL REVENUE—TAX ON TOBACCO—PRETENDED AND ACTUAL SALE—EVIDENCE OF PREVIOUS EVASIONS OF THE REVENUE LAW—INTENT.

1. Under the 90th and 94th sections of the internal revenue act of June 30, 1864 (13 Stat. 224), as amended by the act of July 13, 1866 (14 Stat. 150), and the 61st and 84th sections of the act of July 20, 1868 (15 Stat. 152, 153), a completed sale or a completed removal of manufactured tobacco is a necessary preliminary to the accruing, assessment and payment of the tax upon it.

2. But the provision in the 48th section of the act of 1864, as amended by the act of 1866, which provides for the forfeiture of goods "on which taxes are imposed by the provisions of law, which shall be found in the possession or custody, or within control, of any person or persons, for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws," does not require that there should have been a completed sale or removal of such goods.

3. The provision in the said 48th section, in respect to the forfeiture of raw materials, is not dependent on the provision in regard to taxable articles, so as to make the forfeiture of the raw materials dependent on their being seized in the possession of a person in whose possession forfeitable taxable articles are found.

4. Under the said 48th section the corpus delicti is the possession of the specified property with the specified fraudulent purpose or design, without the doing of any overt act in respect of it.

5. Evidence of the manifestation of a like fraudulent intent at prior times, in respect to kindred matters, may be offered to prove the existence of the fraudulent purpose or design mentioned in the 48th section, as to the articles in question.

[Cited in brief in Doane v. Lockwood, 115 Ill. 491, 4 N. E. 500.]

6. Under the 94th section of the act of June 30, 1864, above cited, as amended by the 9th section of the act of July 13, 1866, tobacco made of leaves from which part of the stems had been removed, and to which an equal proportion of other stems, prepared in a certain way, had been added, and which had not been sweetened, was taxable at forty cents a pound, after the 1st of August, 1866.

7. A manufacturer of tobacco made a pretended sale of a quantity of tobacco on the day before an act increasing the tax on it went into effect, and paid the tax as on a sale. The increased tax went into operation, and was afterwards reduced again below the former rate. After the reduction he sold the tobacco, but made no return of the sale and paid no tax on it: Held, that the transaction was illegal, and that the manufacturer had no right to pay the tax when he did.

[1][Reported by Robert D. Benedict Esq., and here reprinted by permission.]

[2][Affirmed by circuit court; case unreported.]

8. It was also the course of business, in his establishment, to remove from the wholesale department to the retail department a quantity of tobacco at once, and to make a return and pay tax on it as one sale, and not to make any record, or return or pay any tax on the actual sales of it in the retail department: *Held*, that this was an illegal mode of doing business, and that it was for the jury to say what was the intent of the manufacturer in adopting that mode.

[This was an information of forfeiture against a quantity of tobacco, charging a violation of the internal revenue laws. A verdict of condemnation was returned by the jury (Case No. 16,105), and the claimant has now moved for a new trial.]

George T. Curtis, for claimant.
Thomas Simons, Asst. U. S. Dist. Atty.

BLATCHFORD, District Judge. The first four grounds urged, on the part of the claimant, as a reason for granting a new trial in this case, are, that the court erred "in instructing the jury that they could find a verdict in favor of the United States on the issue made by the information and answer, without any proof, on the part of the United States, tending to show that any taxes had become due, or had been imposed, upon the manufactured tobacco seized on the claimant's premises, and without any proof, on the part of the United States, tending to show that the claimant had sold, or removed from his premises for consumption, or was, at the time of the seizure, engaged in selling or removing from his premises for consumption, any of the manufactured tobacco so seized;" and "in instructing the jury, in the absence of any proof that taxes had become imposed on the said manufactured tobacco, and that the claimant had sold or removed, or was engaged in selling or removing, any part of the same, without paying such taxes, that the jury could infer, from previous alleged evasions, or attempts at evasion, of the revenue laws, by the claimant, an intent to sell or remove the said manufactured tobacco without paying the taxes that might become due thereon, and, from such intent, so found, find a forfeiture of the said manufactured tobacco so seized as aforesaid;" and "in instructing the jury, in the absence of any proof that the claimant had sold or removed, or was engaged in selling or removing, any manufactured tobacco on which taxes had been imposed by law, without paying, and without intending to pay, the said taxes, that they could infer, from previous alleged evasions, or attempts at evasion, of the revenue laws, by the claimant, a purpose to sell or remove the manufactured articles which he might thereafter make from the raw materials seized, without paying the taxes that would become due thereon, and, from such purpose, so found, find a forfeiture of the said raw materials;" and "in refusing to give to the jury the instructions prayed for in the 13th and 14th of the claim-

ant's prayers for instructions, and in giving to the jury the 1st and 2d of the instructions prayed for by the district attorney."[3]

The 13th and 14th of the claimant's prayers for instruction were as follows: "(13) That there is no evidence, in this action, that, at the time of the finding or seizure of the property in this action, the claimant had not paid all the taxes due on all the goods, wares, merchandise, articles, or objects, which had been, before that date, manufactured at his factory and sold or removed therefrom. (14) That there is no evidence, in this action, that any goods, wares, merchandise, articles, or objects on which taxes were imposed by the provisions of law, manufactured at the factory of Mr. Lilienthal, were ever sold or removed by him, or by any other person, in fraud of the internal revenue laws, or with design to avoid payment of said taxes."

The prosecution in this suit is founded on that part of the 48th section of the act of June 30, 1864, as amended by the 9th section of the act of July 13, 1866 (14 Stat. 111), which is in these words: "All goods, wares, merchandise, articles, or objects, on which taxes are imposed by the provisions of law, which shall be found in the possession, or custody, or within the control, of any person or persons, for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws, or with design to avoid payment of said taxes, may be seized by the collector or deputy collector of the proper district * * * and the same shall be forfeited to the United States; and also all raw materials found in the possession of any person or persons intending to manufacture the same into articles of a kind subject to tax, for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax; and also all tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or enclosure, where such articles, or such raw materials, shall be found, may also be seized by any collector, or deputy collector, as aforesaid, and the same shall be forfeited as aforesaid." It is claimed that the court put an erroneous construction upon these provisions of the 48th section, in its charge to the jury.

The point of the objection to the construction which the court gave to the section is, that the fact, or the corpus delicti, to be proved, under the section, is not a mere state of mind, or intent, on the part of the person in whose possession the goods, &c., or the raw materials, are found, to commit, at some time, the wrongful act, as against the government, specified in the section, but is the doing of a certain act, with a certain intent. It is conceded, that, if merely such intent is the thing to be proved, the evidence

---

[3] For the 1st and 2d instructions prayed for by the district attorney, and here referred to, see [Case No. 16,105. See, also, Id. 16,106a.]

given in this case as to the former wrongful acts and omissions on the part of the claimant, was not only competent, but was sufficient, if believed by the jury, to establish the intent mentioned in the section and averred in the information. The trial was conducted throughout on the principle, that, to recover, it was only necessary for the government to prove the possession by the claimant, at the time of the seizure, of the manufactured goods and the raw materials, and the finding, in the prescribed situation, of the other personal property proceeded against, and the fact that the manufactured goods were taxable goods, and that the claimant intended to manufacture the raw materials into taxable goods, and that he had the fraudulent intent specified in the section in respect to such taxable goods, manufactured and to be manufactured. It is contended that this view of the statute is erroneous; that the proper construction of so much of the section as precedes the provision in regard to raw materials is, that, when any goods, &c., such as are described, have had taxes imposed on them by the operation of the law, they shall be forfeited if they are sold or removed without the payment of such taxes; that, by the 94th section of the act of June 30, 1864, both as it originally stood (13 Stat. 264), and as amended by the 9th section of the act of July 13, 1866 (14 Stat. 128), taxes do not become payable on manufactured tobacco, until it is sold, or consumed or used by its manufacturer, or removed for consumption, or for delivery to others than agents of the manufacturer within the United States, and, by the 90th section of the said act of June 30, 1864, as amended by the 9th section of the said act of July 13, 1866 (14 Stat. 125), the tax imposed on the manufacturer of tobacco, snuff and cigars, is held to accrue upon the sale or removal from the place of manufacture, unless removed to a bonded warehouse; that the words, in the 48th section, "found in the possession, or custody, or within the control, of any person or persons, for the purpose of being sold or removed by such person or persons," are equivalent to the words "found in the act of being sold or removed," because the tax is imposed in consequence of the sale or removal, and not in consequence of the existence of the purpose to sell or remove; that there must have been a sale or removal, or the goods must be found in the act of being sold or removed, for them to be in the condition prescribed of being goods "on which taxes are imposed by the provisions of law;" that there can be no purpose to sell or remove in fraud of the law, or with design to avoid the payment of taxes, without an overt act of sale or removal done or attempted, because the overt act of sale or removal is what causes the taxes to be imposed, and the taxes the payment of which it is supposed there is a design to avoid, are taxes which have accrued or are accruing by the act of sale or removal; that, as a mere purpose in regard to sale or removal does not impose taxes on the goods, and no taxes are imposed until there is an act of sale or removal, done or attempted, the words, "avoid payment of said taxes," can only apply to taxes which have become payable; that a purpose to defraud the revenue of something can only exist in respect to something to which the revenue is at the time entitled; that, in respect to so much of the 48th section as relates to raw materials, and to tools, &c., the provisions mean, that, where a case of forfeiture exists, as specified in the preceding part of the section, in respect to goods on which taxes have become payable, not only may such goods be forfeited, but also all raw materials found in the possession of the same person in whose possession such goods are found, he intending to manufacture such raw materials into articles of a kind subject to tax, for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax, and also all tools, &c., in the place, &c., where such articles or such raw materials are found; that the clauses making up the provisions for forfeiture are not to be read disjunctively, but connectedly, the forfeitures being connected with each other and succeeding each other, when manufactured articles, raw materials, and tools. &c., are seized in the hands of the same person; and that the purpose of the act is to have a statute applicable to all manufacturers whose productions are liable to pay taxes, whereby, whenever any taxes have become due on any of the manufactured articles, and they have become liable to seizure and forfeiture under the 48th section, in the hands of the manufacturer, not only may they be seized, but his raw materials may be seized and forfeited, if his intent is to make them into taxable articles, and to sell or remove such articles without paying the tax on them, and all tools, &c., found on the same premises, may be seized and forfeited.

In support of the views urged on the part of the claimant as to the proper construction of the 48th section, it is alleged, that, if that section makes a mere intent a cause of forfeiture, it is the first time, in the history of such legislation, that a mere intent has been made a cause of forfeiture. It is also urged, that there is no reason to suppose that congress intended to make the possession of property, the mere possession of which generally is innocent, coupled with an intent to do something wrongful with it at some future time, a cause for the forfeiture of such property; and that a statute which should authorize the seizure and forfeiture of such property, on proof merely of an intent to violate the law in dealing with it in a certain manner at a future time, would be an unreasonable seizure, and in violation of the fourth amendment to the constitution of the United States.

Not only does the 90th section of the act of 1864, as amended by the act of 1866, before referred to, provide, that "the tax imposed upon the manufacturer of tobacco, snuff and cigars shall be held to accrue upon the sale or removal from the place of manufacture, unless removed to a bonded warehouse," but the 61st section of the act of July 20, 1868 (15 Stat. 152, 153), provides, that "upon tobacco and snuff which shall be manufactured and sold, or removed for consumption or use, there shall be collected and assessed the following taxes," and the 81st section of the last named act (Id. 160), contains the same provision in regard to cigars. So, also, by the 94th section of the act of 1864, as amended by the act of 1866, before referred to, taxes do not become payable on any of the manufactured articles specified in that section, unt'l they are sold, or consumed or used by the manufacturer, or removed for consumption. It is quite apparent, from these provisions, that a completed sale, or a completed removal, of the manufactured article, is a necessary preliminary to the accruing, assessment and payment of the tax upon it. Until such completed sale or completed removal has taken place, the manufacturer is not compellable to pay the tax, and it has not accrued so as to be capable of being assessed and collected. If, then, the words "taxes are imposed," in the 48th section, require that the taxable article shall have been sold or removed, so as to cause the tax to have accrued and to be payable upon it, and if those words are equivalent to the words "have accrued and become payable," it is difficult to see how such article can ever be found in the hands of its manufacturer, with the intent to sell or remove it with design to avoid payment of the tax, so as to be subject to forfeiture in his hands, under that section. The section would, under such circumstances, be wholly inapplicable to manufactured articles in the hands of their manufacturer, where the application of the section is most beneficial, and would only apply to such articles after they had gone into the hands of purchasers from him.

The meaning of the words "taxes are imposed," as used in the 48th section, may be deduced from the meaning of the word "imposed," and of kindred words, where used in other portions of the internal revenue laws. Thus, the language, before cited, of the 90th section of the act of 1864, as amended by the act of 1866, is, that "the tax imposed" on the manufacturer of tobacco shall "be held to accrue upon the sale or removal from the place of manufacture." Here, the word "imposed" clearly means "declared to be collectable." The tax declared to be collectable on manufactured tobacco is to be held to accrue and become assessable and payable, on the sale or removal of such tobacco from the place of manufacture. In analogy to this use of the word "imposed," it is proper to say, that, where, in the 48th section, the words

"articles on which taxes are imposed by the provisions of law" are used, they mean "articles on which taxes are, by the provisions of the law, declared to be collectable, when such articles shall be sold or removed."

Again, the provisions of a subsequent part of the 48th section show what the word "imposed" means, in the previous part of that section, and what the words "subject to tax" mean, in the clause in reference to raw materials intended to be manufactured "into articles of a kind subject to tax." The section, after the forfeiture clauses, proceeds to say: "Any person who shall have in his custody or possession any such goods, wares, merchandise, articles, or objects, subject to tax, as aforesaid, for the purpose of selling the same, with the design of avoiding payment of the taxes imposed thereon, shall be liable to a penalty of five hundred dollars, or not less than double the amount of taxes fraudulently attempted to be evaded, to be recovered in any court of competent jurisdiction." If, in this clause, the words "articles subject to tax" are held to mean "articles on which taxes have accrued and become payable, because of a sale or removal," the clause can have no applicability to a manufacturer of the articles. But, the good sense of the words means "articles on which taxes are declared to be collectable," and, in respect to those, if the purpose exists of selling them with the design of avoiding payment of the taxes "imposed thereon" that is, payment of the taxes declared to be collectable thereon, the penalty attaches. So, the raw materials are materials intended to be manufactured into articles of a kind on which taxes are declared to be collectable. There is every reason to suppose that the word "imposed," in respect to taxes on articles, in the two places in which it is used in the 48th section, and the words "subject to tax," in respect to articles, in the two places in which those words are used in that section, mean the same thing: and there is no reason to suppose the contrary. If that be so, then the words "subject to tax" cannot mean "on which taxes have accrued and become payable because of sale or removal," because, in respect to the clause regarding raw materials, the manufactured articles have no existence, so as to be taxable. The fact, that the expression is "articles of a kind subject to tax," can make no difference, for, the second time the words "subject to tax" are used, the expression is "subject to tax as aforesaid," and the only time the expression "subject to tax" is previously used in the section is in the form of words "of a kind subject to tax."

In order to maintain the theory of the claimant, that the words "are imposed" mean "have accrued and become payable," it is also necessary that the further view should be maintained, that the three clauses of forfeiture are to be read connectedly, and not disjunctively. But, it would seem to be a

conclusive objection to reading the clause in regard to raw materials otherwise than disjunctively in respect to the first clause, that the clause in regard to raw materials says, "all raw materials found in the possession of any person or persons," &c., and does not say, "all raw materials found in the possession of such person or persons," &c., referring to the person or persons in whose possession the articles on which taxes are imposed are found. The words of the statute are, "on which taxes are imposed by the provisions of law." It is reasonable to suppose that the word "imposed," in the connection in which it is found in this clause, is used in the same sense in which it is used, in a like connection, in other provisions of the same statute, and in kindred provisions of other revenue laws. On examination, it will be found, that the word "imposed," in such connection, is not used in the act of June 30, 1864, and in other revenue laws, in the sense contended for by the claimant. The 173d section of the act of June 30, 1864 (13 Stat. 304), speaks of "the duty imposed by any existing law," and of no duty having been "imposed" "by any former act," and of the duty "imposed" "by the terms of this act;" and the same terms are used in the 70th section of the act of July 13, 1866 (14 Stat. 173). The 176th section of the said act of 1864 (13 Stat. 305) speaks of a "tax or duty" "imposed by law." The 96th section (Id. 272) speaks of materials "upon which no duties have been imposed by law." The 97th section (Id. 273) speaks of "duties imposed by law enacted subsequent" to the making of a contract, on articles to be delivered under such contract. The 16th section of the act of March 3, 1865 (Id. 486) speaks of the "duty imposed by any previous act." Section 10 of the act of July 13, 1866 (14 Stat. 150) provides, that "no manufactured wire shall pay a greater tax than that imposed on number twenty wire gauge." Section 11 of the act of March 2, 1867 (Id. 476) speaks of the "taxes now imposed by law" on manufactures of iron. The 1st section of the act of March 2, 1867 (Id. 559) speaks of "the duties now imposed by law" on the articles mentioned in that section; and the 2d section of the same act (Id. 561) speaks of "the duties heretofore imposed by law" on certain articles. The language, before referred to, of the 90th section of the act of June 30, 1864, as amended by the 9th section of the act of July 13, 1866 (Id. 125), is very marked, in this respect, where it says, that "the tax imposed upon the manufacturer of tobacco" "shall be held to accrue upon the sale or removal from the place of manufacture," clearly showing that, when the tax or duty is spoken of as "imposed" by the statute, that means that it is declared to be collectable when some event specified shall occur, although the tax or duty does not accrue or become payable on the particular article until the occurring of the event. Many similar instances could be referred to, of such use, in revenue laws, of the words "imposed by the provisions of law," and like words, in respect to taxes and duties.

A use of the words "subject to duty or taxation under the provisions of this act," analogous to the use, in the 48th section, of the words "subject to tax," may be found in the 37th section of the act of June 30, 1864 (13 Stat. 238), where provision is made that revenue officers may enter, in the day time, all places where any articles "subject to duty or taxation under the provisions of this act are made, produced, or kept, to examine them, or the accounts required to be kept by their manufacturer respecting them." Under this provision, most certainly, the officers are not restricted to entering a tobacco manufactory, only when the articles made there have been sold or removed, so that the tax has accrued on them.

A reading of the 48th section, giving the usual accepted meaning to the words found therein, seems to me to lead conclusively to the view, that congress intended to forfeit taxable articles, when held, especially by their manufacturer, for the purpose of being sold or removed in fraud of the revenue laws, or with design to avoid the payment of the taxes which would accrue thereon by reason of such sale or removal, and also to forfeit all raw materials when held by a person intending to manufacture them into taxable articles for the purpose of fraudulently selling such articles, or with design to evade the payment of the taxes which would accrue thereon when sold or removed, and also to forfeit all personal property found in the place where any such articles, or any such raw materials, are found; and that possession, with the specified purpose, design or intent, is all that is necessary to work the forfeiture. The provision, in the same section, that the possession of the taxable articles, for the purpose of selling them, with the design of avoiding payment of the taxes, shall subject the possessor to a penalty of not less than double the amount of taxes fraudulently attempted to be evaded, is in harmony with the provisions in regard to forfeiture. The possession for such purpose renders the possessor liable to a penalty of double the amount of the taxes which, on a sale, would accrue on the articles. Such taxes are fraudulently attempted to be evaded when the articles are held for such purpose.

The legislation of congress on the subject shows a uniform design in harmony with this view. The 114th section of the act of July 1, 1862, the first internal revenue act (12 Stat. 487), provided, that "all articles upon which duties are imposed by the provisions of this act, which shall be found in the possession of any person or persons, for the purpose of being sold by such person or persons in fraud thereof, and with the design to avoid payment of said duties, may be

seized by any collector or deputy collector who shall have reason to believe that the same are possessed for the purpose aforesaid, and the same shall be forfeited to the United States; * * * and any person who shall have in his possession any such articles, for the purpose of selling the same, with the design of avoiding payment of the duties imposed thereon by this act, shall be liable to a penalty," &c. The 48th section of the act of June 30, 1864, as originally passed (13 Stat. 240), carried out the same principle, by re-enacting the provisions of the 114th section of the act of 1862, and extending them, by providing for the forfeiture of raw materials intended to be manufactured into articles to be sold in fraud of the internal revenue laws, or with design to evade the payment of duties imposed by the provisions of law, and for the forfeiture of all personal property found in the same place with the articles on which duties are imposed, and intended to be used by the possessor of such raw materials in the fraudulent manufacture of such raw materials. The section was amended by the act of July 13, 1866, to read as before recited, being made more stringent as respected personal property, so as to cover all personal property found in the same place with either the articles or the raw materials, and without reference to the intended use of such personal property.

No direct adjudication is found as to the construction of this section, in respect to the point taken by the claimant. Yet many condemnations have been decreed under it, both in this court and in other courts, where the point was as open and proper to be taken as in this case. But it does not seem to have been raised. There are, however, several cases where the language of the court indicates the view, taken by it of the general scope of the section. In U. S. v. One Still [Case No. 15,954]. Mr. Justice Nelson says, that the 48th section is very comprehensive, and was so designed, and that the reason for the seizure of the articles on which taxes are imposed by law, and of the raw materials, is, "for the fraudulent intent of the person in the possession or control of them, that is, an intent to defraud the public revenue by evading the tax." In U. S. v. Thirty-Six Barrels [Id. 16,468], Judge Woodruff says, that the object of the 48th section is "to enable the government to anticipate and prevent the sale or removal, and to proceed to a forfeiture before the overt act of fraud is perpetrated;" that "it is enacted in view of the very great difficulty, if not impracticability, of following distilled liquors, after sale or removal, or of identifying them, if found, and, also, in view of the ease with which they may be passed into the hands of bona fide purchasers;" that "the fraudulent intent or design" of the person in possession of the spirits "is the cause of forfeiture;" that the object of the statute is to "prevent the accomplishment of meditated evasion and

fraud;" that "it should be construed, so far as a fair interpretation of its language will permit, in a manner adapted to effect the purposes of its enactment;" that the section "has respect to the intentions, purposes, and designs of the party" in possession, which intentions, purposes, and designs are "the ground of the forfeiture, entirely irrespective of the difficulties which may lie in the way of accomplishing his intention;" and that the terms of the section must not receive "a narrow construction," "not called for by their fair, natural, and legal meaning," but must be construed "so as most effectually to accomplish the intention of the legislature in passing it." The principles laid down by the supreme court of the United States, in its decision in the recent case of U. S. v. 100 Barrels, 14 Wall. [81 U. S.] 44, seem to me to fully sustain the construction I place upon the provisions of the 48th section.

There seems to me to be no warrant for saying that there is any evidence to be found, in the 48th section, of any intention to make the provision in regard to raw materials dependent upon, and connected with, the provision in regard to taxable articles, and to make a forfeiture of the raw materials depend upon their being seized in the possession of a person in whose possession forfeitable taxable articles are found. The language manifests a plain intention that all raw materials found in the possession of any person who intends to manufacture them into articles of a kind subject to tax, for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of taxes thereon, shall be seized and forfeited, without reference to the question whether manufactured articles of a kind subject to tax are or are not found in the possession of the same person. In such case, all personal property whatsoever, found in the same place, building or inclosure where the raw materials are found, may be seized and forfeited. In the present case, the raw materials were found in the possession of the claimant, and the bill of exceptions states that there was evidence tending to show that he intended to manufacture them into articles of a kind subject to tax by the provisions of the internal revenue law in force at the time, and shows that evidence was given tending to show that the claimant had the purpose of fraudulently selling the manufactured articles to be made out of such raw materials, and designed to evade the payment of the taxes thereon. Such evidence was, in my judgment, sufficient to warrant the verdict condemning the raw materials. If they were properly condemned, then all the taxable manufactured articles, and other items of property, that were seized, were properly condemnable under the description of "all personal property whatsoever," because they were found in the same place with such raw material. In this view, it is of no importance whether any manu-

factured articles on which taxes had in fact accrued, were or were not found in the possession of the claimant.

Criticism is made on the fact, that the information, after averring the seizure, states that, "prior to said seizure, taxes were imposed, by the provisions of law, upon the said tobacco," that is, the manufactured tobacco, "and the same, being so subject to the payment of taxes as aforesaid, were found," &c.; and, it is urged, that this language of the pleader shows that he interpreted the 48th section as 'requiring that taxes should have accrued and become payable on such manufactured tobacco, and that, having alleged this fact, it ought to have been proved, and was not proved. But the averment is not fairly susceptible of this interpretation. It goes on to say that such tobacco was found in a certain possession, for a specified purpose, against this 48th section. It refers to the section as the foundation of the forfeiture. As the section does not require that the tax should have accrued or become payable, the words "subject to the payment of taxes as aforesaid," having reference solely to the expression immediately preceding, that taxes were imposed on the tobacco by the provisions of law, are equivalent to no more than the expression "subject to tax as aforesaid," which, as has been shown, is only a synonym for the words "on which taxes are imposed by the provisions of law." The allegation, that "prior to said seizure, taxes were imposed by the provisions of law" on the manufactured tobacco seized, is equivalent to no more than the allegation, that, when such tobacco was seized, it was an article of a kind on which, under the law, a tax could accrue without its being further manufactured.

Legislation equally stringent with that found in the 48th section, for the purpose of preventing meditated fraud, is to be met with in various parts of the internal revenue laws. The 43d section of the act of July 20, 1868 (15 Stat. 142), provides, that any railroad company, or transportation company, or person, who shall have in possession, with intent to transport, or to cause or procure to be transported, any empty distilled spirits cask having on it a brand or stamp required by law for a cask containing distilled spirits, shall forfeit $300 for each such cask had in possession with such intent. The 72d section of the same act (Id. 156) provides, that any person who shall give away or accept any empty stamped tobacco- or snuff-box, shall be fined $100 and imprisoned for not less than twenty days and not more than one year. The 89th section of the same act (Id. 162) provides, that any person who shall receive, give away, or have in his possession, any cigar tax stamp removed from any box of cigars, shall be deemed guilty of a felony, and fined not less than $100 nor more than $1,000, and imprisoned not less than six months nor more than three years. As, un-

der the 48th section, the corpus delicti, and the only one, is the possession of the specified property, with the specified fraudulent purpose or design, without the doing of any overt act in respect of it, there is no reason why the general principle, that intent may be proved by proving manifestations at prior times of like fraudulent intent in respect of kindred matters, should not be applied to the proving of the fraudulent purpose or design mentioned in the 48th section. In Wood v. U. S., 16 Pet. [41 U. S.] 342, 361, it is said, that, whenever a fraudulent intention is to be established, collateral facts tending to show such intention are admissible proof. The principle was applied by Judge Woodruff in U. S. v. 36 Barrels [Case No. 16,460]. and in U. S. v. 18 Barrels [Id. 15,033]. In the present case the seizure took place on the 25th of March, 1868, and the testimony as to the intent of the claimant in respect of the taxable tobacco and the raw materials seized, was entirely testimony in respect to previous acts of omission and commisison in his establishment, in conducting its business, in its relations to the internal revenue laws, which acts were claimed to have been in violation and fraud of such laws, and to have had in them a fraudulent intent on the part of the claimant. Those acts are concisely summed up in the two requests to charge on the part of the government. They consisted of a failure to keep the required account of tobacco and snuff manufactured from August, 1866, to January, 1868; of tne removal for sale, and the removal from the place of manufacture. during that period, of quantities of tobacco and snuff, without any account thereof being kept, as of removals, and without any accurate account of the tobacco so received being kept in the statutory books; of the sale, during that period, of large quantities of manufactured tobacco. without any account of such sales, as sales, being kept in such books; of the sale and removal from the claimant's premises, during all but the last month of that period. of quantities of purchased manufactured tobacco, without any accurate account of such sales or removals being kept in such books; of the rendering to the assistant assessor, during the whole of that period, of untrue and inaccurate abstracts of such sales and removals; of the manufacture of much more chewing tobacco and fine cut shorts in the claimant's manufactory, during 1867, than was declared, on such abstracts. to have been manufactured; of the sale and removal, during 1867, of a large quantity of smoking tobacco, manufactured on said premises, which was not returned for taxation on said abstracts, and of which no account was contained therein or in the statutory books; and of certain acts of the claimant (set forth in the second request to charge on the part of the government, before recited) in respect to the manufacture of "extra long smoking tobacco," and in respect to returning it for tax-

ation, during the period before mentioned, evincing not only a purpose of selling and removing such tobacco in fraud of the internal revenue laws, and an intent to evade the payment of taxes thereon, but resulting in the commission of such fraud and the evasion of the payment of a large amount of taxes.

In respect to all of these acts, except those relating to the "extra long smoking tobacco," the court charged the jury, that, if they believed such acts were done by the claimant, the burden of proof was on the claimant to satisfy them that the tobacco so manufactured on his premises, and sold or removed without due account, return or entry being made thereof in such books and abstracts, in the manner required by law, was not so sold and removed in fraud of the internal revenue laws and with intent to evade the taxes thereon; and that, if the claimant had not so satisfied the jury of his intent respecting the same, they might infer that his intent in respect of the same was fraudulent, and that his possession of the goods in suit was with the like intent. In regard to the acts relating to the manufacture of the "extra long smoking tobacco" and the returning it for taxation, the court charged the jury, that, if they found that such acts were done by the claimant for the purpose of selling and removing such tobacco in fraud of the internal revenue laws and with intent to evade the payment of taxes thereon, they would have a right to infer that the claimant and his agents had the like intent with respect to the property in suit. Elsewhere the court charged the jury, in substance, that, if the acts of the claimant between August, 1866, and January, 1868, in respect to the "extra long smoking tobacco," showed an intent to defraud the government in regard to the tax upon such tobacco, and if his acts during the same period in regard to what was called the Orinoco tobacco, such acts being contrary to law, showed an intent to defraud the government, and if his acts in violating the law in regard to the keeping of the statutory books, and the unlawful and irregular character of the inventories and returns he made, showed an intent not to deal honestly with the government, but to violate the law, the jury had the right to infer that a fraudulent intent existed in regard to the goods on hand in his establishment when it was seized. I perceive no error in these instructions. In criminal cases, the law presumes every unlawful act to have been criminally intended until the contrary appears, and throws on the accused the burden of disproving the intent; and the same presumption arises in civil actions, where the act complained of was unlawful. 1 Greenl. Ev. § 34. In Cook v. Moore, 11 Cush. 213, the question was whether, to prove a wilful concealment of property by the defendant with a fraudulent purpose, contrary to the bankruptcy act of 1841, it was competent to show an intent, prior to the passage of that act, to defraud the plaintiff

of his debt by a fraudulent concealment and conveyance of property. The court held that it was. They say: "Whenever the intent of a party forms part of the matter in issue, upon the pleadings, evidence may be given of other acts, not in issue, provided they tend to establish the intent of the party in doing the acts in question. The reason for this rule is obvious. The only mode of showing a present intent is often to be found in proof of a like intent previously entertained.

Particular objection is made to the instruction as to the burden of proof, contained in the first prayer on the part of the government. The acts recited therein were unlawful acts, contrary to the statute, and, therefore, presumed to result in defrauding the government. The instruction was, that, if the unlawful sales or removals of the tobacco, from August, 1866, to January, 1868, were proved, and the unlawful neglects in respect to the not entering such sales and removals in the books, abstracts and returns were proved, then, as the legal presumption therefrom was that such sales and removals took place in fraud of the internal revenue laws, and with intent to evade the taxes on the tobacco, the burden of proof was on the claimant to satisfy the jury that such sales and removals were not in fraud of such laws and with intent to evade such taxes; and that, in view of such legal presumption, if the claimant had not rebutted it, the jury had a right to infer a fraudulent intent in respect to such sales and removals, and also to infer that the claimant's possession of the goods in suit was with the like intent. In addition to the observations already made, I regard the propriety of this instruction as having been sanctioned by Judge Woodruff in U. S. v. 18 Barrels [Case No. 15,033], where, only slight evidence having been given, in behalf of the government, tending to show that the claimant of distilled spirits had not made true and exact entry and return, it was held that this cast the burden on the claimant, to show that he had complied with the statute. In U. S. v. Brewery Utensils [Id. 14,641], it was held by Judge McCandless, that, from a neglect by a brewer to obey the law, an intent to evade its provisions would be presumed, in the absence of any explanation. See, also, Clements v. Moore, 6 Wall. [73 U. S.] 299; The Luminary, 8 Wheat. [21 U. S.] 407; The Slavers, 2 Wall. [69 U. S.] 350, 366, 375.

As to the 13th and 14th of the claimant's prayers for instructions, if they are understood as raising the question of the proper construction of the 48th section, that has been passed upon. If they are understood, as it appears from the bill of exceptions the court understood them at the trial, as involving propositions of fact, as to the evidence, addressed to the court, and which were solely questions for the jury, there was no error in declining to charge in accordance with them.

This disposes of all the questions involved in the first four grounds urged as reasons

for granting a new trial. It is proper to say, that the point now raised, as to the construction of the 48th section, was not in fact presented to the mind of the court at the trial, and was not raised at the trial otherwise than as it may seem to be involved in some of the exceptions to the charge, and in some of the exceptions to refusals to charge in accordance with requests on the part of the claimant, and which exceptions present it, if at all, in ambiguous language, capable as well of another interpretation as of an interpretation that they raise this point; and that the point is raised by counsel who took no part in the trial.

The fifth ground urged for a new trial is, that the court erred "in instructing the jury that it was immaterial to any issue in this case, what was the lawful rate of tax payable on the said 'extra long smoking tobacco,' embraced in seventeen returns made by the claimant, and in not instructing the jury that the lawful rate of tax payable on the said tobacco was fifteen cents per pound." It is contended, for the claimant, that this tobacco was made partly of leaf and partly of stems, all chopped up together, not sweetened, and put up and sold as smoking tobacco, the stems having undergone a secret process of dyeing, to assimilate them in color to the leaf; that, as it was made in part of stems, it was, under the 94th section of the act of June 30, 1864, as amended by the 9th section of the act of July 13, 1866 (14 Stat. 133), subject to a tax of only fifteen cents per pound; and that the claimant violated no law in returning such tobacco for tax at fifteen cents per pound. If the lawful rate of tax on such tobacco from and including August 1, 1866, to and including January 1, 1868, embracing the period during which the claimant returned it at fifteen cents per pound, was greater that that rate, it follows that there was not, in the instruction, any error prejudicial to the claimant.

Under the 94th section of the act of June 30, 1864, as amended by the 1st section of the act of March 3, 1865 (13 Stat. 477), these were the taxes on manufactured tobacco other than snuff, cigars, and chewing tobacco: "On * * * all * * * kinds of manufactured tobacco, not herein otherwise provided for, forty cents per pound. On tobacco twisted by hand, or reduced from leaf into a condition to be consumed, without the use of any machine or instrument, and without being pressed, sweetened, or otherwise prepared, thirty cents per pound. * * * On smoking tobacco of all kinds, and imitations thereof, not otherwise herein provided for, thirty-five cents per pound. On smoking tobacco made exclusively of stems, and so sold, fifteen cents per pound." Under those provisions, this "extra long smoking tobacco" was subject to a tax of thirty-five cents per pound. The act made the tax only fifteen cents per pound on smoking tobacco made exclusively of stems, made of the inferior part of the tobacco leaf,

and having none of the leaf part in it; while on all other manufactured tobacco it imposed taxes of thirty, thirty-five and forty cents per pound. The same distinction is found in the 94th section of the act of June 30, 1864, as originally enacted (Id. 270), where smoking tobacco made exclusively of stems is taxed fifteen cents per pound, and all other manufactured tobacco has taxes imposed on it of twenty-five and thirty-five cents per pound; and in the 75th section of the act of July 1, 1862, as amended by the 1st section of the act of March 3, 1863 (12 Stat. 717), where smoking tobacco prepared with all the stems in, or made exclusively of stems, is taxed five cents per pound, and all other manufactured tobacco fifteen and twenty cents per pound; and in the 75th section of the act of July 1, 1862, as originally enacted (Id. 463), where smoking tobacco made exclusively of stems is taxed two cents per pound, smoking tobacco prepared with all the stems in, five cents per pound, and all other manufactured tobacco, ten, fifteen, and twenty cents per pound.

Such was the course of legislation on this subject. The 9th section of the act of July 13, 1866 (14 Stat. 133), further amended the 94th section of the act of June 30, 1864, by providing that, on and after the 1st of August, 1866, the following should be the taxes on manufactured tobacco: "On snuff, manufactured of tobacco, or any substitute for tobacco, * * * forty cents per pound. On * * * all * * * kinds of manufactured tobacco, not herein otherwise provided for,· * * * forty cents per pound. On tobacco twisted by hand, or reduced from leaf into a condition to be consumed without the use of any machine or instrument, and without being pressed, sweetened or otherwise prepared, and on fine cut shorts, * * * thirty cents per pound. On fine cut chewing tobacco, whether manufactured with the stems in or not, or however sold, * * * forty cents per pound. On smoking tobacco, sweetened, stemmed or butted. * * * forty cents per pound. On smoking tobacco, of all kinds, not sweetened, nor stemmed, nor butted, including that made of stems, or in part of stems, and imitations thereof, * * * fifteen cents per pound." In these provisions, there is the same indication of an intention to tax at a low rate tobacco either made wholly of stems, or having in it all its natural stems, and to tax all other tobacco at a higher rate, the former being taxed at fifteen cents per pound, and all other manufactured tobacco being taxed at thirty and forty cents per pound.

This "extra long smoking tobacco," being manufactured tobacco, was, if not otherwise provided for in the act, taxable at forty cents a pound. So, also, if it was smoking tobacco stemmed or butted, it was taxable at forty cents a pound. It is insisted by the claimant, that, having some stems in it, and not being sweetened, it was taxable at

fifteen cents a pound, on and after August 1, 1866. The bill of exceptions shows that the mode of making this "extra long smoking tobacco" was, to take the entire tobacco leaf, and remove from it from one-half to three-fourths in length of the woody central stem that runs through the leaf from end to end, so as to leave in the leaf at its top not enough stem to be noticeable in the product after cutting, and then to cut up together the residuary leaf with stems previously soaked in a certain dye stuff without being sweetened. Prior to August 20, 1866, for several years, the proportion of such residuary leaf to such dyed stem was seven pounds of the former to two pounds of the latter, and, after that date, the proportion of such residuary leaf to such dyed stem was two pounds of the former to one pound of the latter. It having been ascertained, by experiment, that the average proportion, by weight, of the butts or portions of stem extracted from the leaf, in making this tobacco, was one-fourth of the weight of the entire leaf, it was intended, in making this tobacco, after August 20, 1866, to cut up, with a given weight of the residuary leaf, at least as much dyed stems as would equal in weight the average quantity of stems taken out of the leaf. When ready for sale, the stem was not distinguishable from the leaf. In the understanding of tobacco manufacturers, leaf tobacco is "stemmed" when the whole of the central stem has been removed from the leaf; and it is "butted," when the thick end or lower portion of the stem is drawn out of the leaf, leaving more or less of the upper part of the stem still in the leaf. It was not practicable, in the process actually employed by the claimant, to restore or replace the identical portions of stem extracted from the leaf. All of such tobacco returned by the claimant for August, 1866, after the 20th, and for the sixteen succeeding months, was returned by him as liable to a tax of fifteen cents per pound, under the act of July 13, 1866, and was classified, in the returns, as "smoking tobacco, not sweetened, stemmed or butted, including that made of stems," and he paid taxes on it at that rate only.

The contention, on the part of the claimant, is, that the statute says that smoking tobacco made in part of stems, that is, smoking tobacco having in it some stems, and not sweetened, shall pay a tax of only fifteen cents per pound; that this tobacco had some stems in it, and, therefore, was made in part of stems, and was not sweetened; and that, consequently, it was liable to a tax of only fifteen cents per pound. It is urged, for the claimant, that it is immaterial, under the statute, whether the identical stems were put back with the residuary leaf, or whether an equal quantity of stems was put back with it, or whether the same proportion was maintained, in the ultimate product, between stem and leaf, that

existed in the tobacco as grown; and that, as long as the tobacco is not sweetened, and is smoking tobacco, and is made wholly of stems, or partly of stems and partly of leaf, it is within the fifteen cents a pound clause.

An analysis of the provisions of the statute will aid in ascertaining its meaning. The words "on smoking tobacco, sweetened, stemmed or butted, a tax of forty cents per pound," mean, "on smoking tobacco manufactured from leaf tobacco which has been sweetened, or stemmed, or butted, a tax of forty cents per pound." The words, "on smoking tobacco, of all kinds, not sweetened, nor stemmed, nor butted, * * * a tax of fifteen cents per pound," mean, "on smoking tobacco manufactured from leaf tobacco which has not been sweetened, and has not been stemmed, and has not been butted, * * * a tax of fifteen cents per pound." This last clause embraces, also, smoking tobacco "made of stems, or in part of stems, and imitations thereof." This "extra long smoking tobacco" was made from leaf tobacco which had been butted, stems separately prepared being afterwards added to the residuary leaf. As smoking tobacco manufactured from butted leaves it was within the forty cents a pound clause. If it had had no separate stems added to the residuary leaf, but had been made solely of the residuary leaf left after butting, it would have had in it at least one quarter in length of the central stem left in the leaf after butting, and thus would have been made "in part of stems," and so been subject to the fifteen cents a pound clause, under the reading of that clause contended for by the claimant, although, being smoking tobacco merely butted, it would clearly have been within the forty cents a pound clause. A construction of the fifteen cents a pound clause, which would put such butted tobacco within that clause, when it is manifest the intention was that it should be solely in the forty cents a pound clause, cannot be admitted, if both clauses are capable of such a construction as will not allow any one article to fall within both of them. I think that the forty cents a pound clause as to smoking tobacco manifestly includes all smoking tobacco in which sweetened leaf is a constituent, and all in which stemmed leaf is a constituent, and all in which butted leaf is a constituent. In direct contradistinction to this, the fifteen cents a pound clause says that smoking tobacco made of tobacco leaves in their natural state as to stem and leaf, and not at all sweetened, and in which stemmed leaf is not a constituent, and in which butted leaf is not a constituent, shall pay only fifteen cents a pound tax. It will not do to go outside of the plain language of the statute to open wide a door to fraud, by saying that you may butt the leaves, and then restore other butts equal in quantity to the removed butts, and call the product tobacco not butted; or stem the

leaves, and then restore other stems equal in quantity to the removed stems, and call the product tobacco not stemmed. The stem is the least valuable part of the tobacco. It is allowed to be cut up in and with and as a part of the leaf as it grew, as smoking tobacco, at the low rate of tax. If it is so cut up, there is sure to be in the product a certain average quantity of stem. If the stem or butt is allowed to be removed, what is left becomes at once more valuable than the whole was, and liable to the forty cents a pound tax; and it cannot for a moment be supposed that congress intended that the putting back a part of the removed stem or butt should reduce the tobacco to the fifteen cents a pound clause, while the manufacturer would be able to impose on the public by selling the product as one of a quality taxable at forty cents a pound.

In view of these considerations, and in harmony with them, an interpretation can be given to the words, "including that made of stems, or in part of stems, and imitations thereof," entirely consistent with the language, and not open to the objection of including within the fifteen cents a pound clause smoking tobacco already clearly put into the forty cents a pound clause. The stems being the least valuable part, congress first provided, in the fifteen cents a pound clause, that smoking tobacco made by cutting up the natural leaf, and, therefore, including all the stem which grew in the leaf, should pay only fifteen cents a pound. It then passed to an inferior grade of smoking tobacco, by providing that smoking tobacco made wholly of stems, without any admixture of leaf, should pay only fifteen cents a pound. It then passed to a still lower grade, by providing that smoking tobacco made, as to part of it, of tobacco stems, and, as to the rest of it, of imitations of tobacco stems, should pay only fifteen cents per pound. If the words "in part of stems" are to be so construed, as contended by the claimant, as to put into the fifteen cents a pound clause smoking tobacco having but a small quantity of stem in it, and the rest nearly all pure leaf, making a product nearly equal, perhaps, in quality, to stemmed leaf paying forty cents a pound, we not only have congress opening the way to the government's being defrauded readily of twenty-five cents a pound on large quantities of smoking tobacco, but we have it making an enactment which allows, as said before, smoking tobacco made of butted leaf and having in it some stems to be within both the forty cents a pound clause and the fifteen cents a pound clause. The words "in part of stems, and imitations thereof," would naturally indicate a lower grade of tobacco than that "made of stems," whereas, on the interpretation contended for by the claimant, a grade of tobacco nearly up to pure stemmed leaf may be included in the words "in part of stems." The words "in part of stems, and imitations thereof," have no other meaning than if they read "of stems in part and imitations thereof," that is, of stems partly, and, as to the rest of the constituents, of imitations of stems; and no other meaning than if they read "in part of stems, and in part of imitations thereof." The words are not happily chosen, but it is not possible, in my judgment, to give them a meaning which would allow this "extra long smoking tobacco" to have been subject to any other tax than that of forty cents a pound.

Not only is this construction in harmony with the prior legislation of congress in regard to manufactured tobacco, but subsequent legislation confirms these views. The 61st section of the act of July 20, 1868 (15 Stat. 153), imposes a tax of sixteen cents per pound "on all smoking tobacco exclusively of stems, or of leaf with all the stems in, and so sold, the leaf not having been previously stripped, butted, or rolled, and from which no part of the stems have been separated by sifting, stripping, dressing, or in any other manner, either before, during, or after the process of manufacturing, on all fine cut shorts, the refuse of fine cut chewing tobacco which has passed through a riddle of thirty-six meshes to the square inch, by process of sifting, and on all refuse scraps and sweepings of tobacco;" and on all other manufactured tobacco and snuff a tax of thirty-two cents per pound.

The court charged the jury, that it was not necessary to determine what was the proper interpretation of the fifteen cents clause in the act of 1866, or under what head in that act the "extra long smoking tobacco" fell. It also charged the jury, in accordance with the first proposition on the part of the claimant, that, if they should believe that the returns for taxation, of the "extra long smoking tobacco," between August, 1866, and the date of seizure were made in good faith and with an honest belief, on the part of the claimant and his agents concerned in the preparation of said returns, that said tobacco was liable to the fifteen cents rate of duty, and to no other or higher rate, then, even though said tobacco was, by law, liable to the forty cents rate of duty, the jury could not, for that cause, find a verdict for the government, under section 48. But the court refused to charge, as requested by the claimant, that the "extra long smoking tobacco," if composed of both stem and leaf, or if made in part of stems, or if it contained a quantity of stem as great as, or greater than, that which grew with the leaf contained in said tobacco, was liable to a tax of only fifteen cents per pound. Although it may have been erroneous to charge the jury, as was done in substance, that it was immaterial to any issue in this case what was the lawful rate of tax on the "extra long smoking tobacco," yet, as such lawful rate was, in fact, forty cents a pound, the error, if any, was prejudicial only to the government, and not to the

claimant, and it was not erroneous to not instruct the jury that the lawful rate of tax payable on such tobacco was fifteen cents per pound.

The sixth ground urged for a new trial is, that the court erred "in instructing the jury that it was illegal for the claimant to return for tax the Orinoco tobacco in the bill of exceptions mentioned, under the circumstances therein mentioned," and "in instructing the jury that they could infer from the transactions in the bill of exceptions described an intent to defraud the revenue thereby." The facts in regard to this Orinoco tobacco, as set out in the bill of exceptions, are these: From a period prior to March, 1865, and down to April and May, 1867, the claimant had in his factory, stored in its lofts, 7,000 pounds of smoking tobacco, called "pressed Orinoco tobacco," manufactured by him, being leaves having all the stems in, and the leaves not having been sweetened or butted or stripped from the stems. In his monthly return for March, 1865, of sales and removals of manufactured tobacco during that month, he returned said 7,000 pounds as sold during that month, and subject to a tax of twenty-five cents per pound, under the act of June 30, 1864, and paid tax on it at that rate. In his book of sales, under date of March 8, 1865, appeared an entry of a sale of $60,000 worth of manufactured tobacco (including the said 7,000 pounds) to Kearney & Waterman, a commission paper house. A bill of the goods was made out to Kearney & Waterman, but the goods were never delivered to them, and were not removed from the factory. The claimant himself testified, that the goods were never intended to be delivered to Kearney & Waterman; that it was understood between him and Kearney & Waterman that the goods were sold and bought back; that this proceeding was for the purpose of returning the said goods as sold, in his monthly return for taxation for March, 1865, in order to avoid the payment of an increased rate of taxation to which said goods would be liable under the act of March 3, 1865, which was to take effect April 1, 1865; that, prior to said transaction with Kearney & Waterman, he consulted with some members of the senate committee on finance, and with several members of the house committee of ways and means, as to whether, in respect of goods on hand when the said act of March 3, 1865, should go into effect, he would have a right to return the same for taxation under the act of June 30, 1864, and was advised by them that he would have such right; and that he had no purpose to defraud the government, but considered that such a transaction warranted him in returning the goods as sold. The 7,000 pounds of Orinoco tobacco remained in the claimant's factory until April and May, 1867, when he sent it to California for sale. When it was so removed for sale he did not return it for taxation, and he did not keep any account,

in the statutory book, of such removal for sale of such tobacco. If it had been then returned, it would have been liable to a tax of only fifteen cents a pound. Under the 94th section of the act of June 30, 1864 (13 Stat. 270), it was liable to a tax of twenty-five cents per pound, as "smoking tobacco, manufactured with all the stem in, the leaf not having been butted or stripped from the stem." By the amendment made by the 1st section of the act of March 3, 1865 (Id. 477), to the 94th section of the act of 1864, which amendment was to take effect on and after the 1st of April, 1865, it would have been liable to a tax of thirty-five cents per pound, as being smoking tobacco not made exclusively of stems. This rate of tax on it continued until August 1, 1866, after which date, by the amendment made to the 94th section of the act of 1864, by the 9th section of the act of July 13, 1866 (14 Stat. 133), the tax on it was fifteen cents per pound, as smoking tobacco, not sweetened, nor stemmed, nor butted; and that was the rate of tax on it in April and May, 1867, when it was removed to California for sale.

On this state of facts the court charged the jury, that this transaction of the claimant's was illegal; that it was illegal to return the tobacco for taxation in March, 1865, because it had not been sold or removed for consumption; that, under the 94th section of the act of 1864, under which the tobacco was returned for taxation in March, 1865, the tax of twenty-five cents a pound was leviable, collectable, and payable on the tobacco only when it was sold, or consumed or used by its manufacturer, or removed for consumption or for delivery to others than agents of the manufacturer within the United States or territories thereof; that there was no real sale of the tobacco in March, 1865; and that a removal for consumption, as defined in the 91st section of the act of 1864 (13 Stat. 263), required that there should be a removal of the tobacco from the premises of the manufacturer, in good faith, with a then present intention to have it consumed, as against the will of the manufacturer and owner of it. On the trial it was contended, for the claimant, that, as he had returned this tobacco in March, 1865, and paid a tax on it of twenty-five cents a pound, he was under no obligation to make a return of it afterwards and pay another tax upon it, especially if, at the time it was afterwards sold or removed for consumption, the tax on it was fifteen cents a pound; and that it was lawful for the claimant to return this tobacco for taxation in March, 1865, and pay a tax on it then. In support of these views, the 70th section of the act of July 13, 1866 (14 Stat. 173), was referred to, which was in force when this tobacco was removed from the claimant's factory in April and May, 1867. That section provides, that "all manufactures and productions on which a duty was imposed by either of the acts repealed by this act"

(which includes the provisions of the act of June 30, 1864, imposing duties on tobacco, and which were the provisions in force in March, 1865, when this tobacco was returned for taxation, and also includes the provisions of the 9th section of that act, as amended by the act of March 3, 1865, and which latter provisions were in force, taxing tobacco, from April 1, 1865, to August 1, 1866), "which shall be in the possession of the manufacturer or producer, or of his agent or agents, on the day when this act takes effect," August 1, 1866, "the duty imposed by any such former act not having been paid, shall be held and deemed to have been manufactured and produced after such date." The effect of this provision, in respect to this tobacco, was contended by the claimant to be, that, although this tobacco was in his possession, as its manufacturer, on the 1st of August, 1866, yet it could not be deemed to have been manufactured on or after August 1, 1866, because the duty imposed on it by the act of June 30, 1864, had been paid in March, 1865. But the court charged the jury, that, as no tax was leviable, collectable or payable on this tobacco, under the act of 1864, until it was sold or removed for consumption, the case was not one where a duty imposed by that act had been paid, within the meaning of the provision of the 70th section of the act of 1866; that the claimant had no right to return this tobacco for taxation at twenty-five cents a pound, especially when he acknowledged that he did so to get rid of the coming thirty-five cents a pound tax, and when he had an intent to commit a fraud on the government; and that the policy of the law was manifest, not to permit tax-paid goods, unsold, to be kept in masses on the premises of their manufacturer. In reference to this Orinoco tobacco, the court further charged the jury, as requested by the claimant, that, even if they should find that a fraudulent intent existed in the mind of the claimant at the time of making the return of such tobacco in March, 1865, that fact of itself would not justify them in finding the existence of a fraudulent intention on his part in respect to the property proceeded against, at the time that property was found or seized; that, if they should find that a fraudulent act was committed by the claimant in 1865, in respect to property then in his possession, that alone, unless supported by other evidence, was not sufficient to warrant them in finding the existence of a fraudulent intent on his part in regard to the property found in his possession in 1868, and would not warrant a verdict of condemnation; that, if he paid the twenty-five cents a pound tax on this tobacco in 1865, he became liable to pay no additional tax on it by reason of its shipment to California in 1867; that if, when he shipped it to California, he believed that all the tax due on it to the government had been paid, his failure to return it for taxation on

such shipment was no evidence of fraudulent intent on his part; and that, if in March, 1865, when he paid the tax, he believed that such tax was due, he could have had no fraudulent intent, but it must have been the payment of a tax which he honestly believed at the time he had a right to pay, and not the payment of a tax merely because it was going to be raised the next day to thirty-five cents a pound.

It is contended, on the part of the claimant, that it was not unlawful for him to return this Orinoco tobacco for taxation in March, 1865, and pay upon it at that time a tax of twenty-five cents a pound; that the fact of the so-called sale to Kearney & Waterman is an immaterial and irrelevant fact; that the motive which governed the claimant in paying the tax before the 1st of April, 1865, instead of waiting until a future day, is immaterial; that he had a lawful right to pay it, even though he did so for the purpose of avoiding the higher duty that was to go into effect on the 1st of April, 1865; that any person holding property on which a tax will become due on the doing of some act by him, such as a sale or a removal of such property, may himself dispense with the doing of that act, and tender and pay the tax to the government; that the paying of the tax to the government is waiver of the necessity of doing the act on the doing of which the tax would properly accrue; that the act of sale or removal, considered as a prerequisite to the accruing of the tax, is an act not in the interest of the government, but an act in the interest of the tax-payer, and prescribed for his convenience, and, therefore, an act which he may disclaim or waive the doing of, by anticipating the payment of the tax; that no harm can result to the government from an accumulation of tax-paid manufactured articles in the hands of their manufacturer; and that what the claimant did in regard to this Orinoco tobacco has no tendency to show that he intended to commit a fraud on the government.

The proposition advanced on the part of the claimant is, that, although the statute provides that a certain tax shall become payable on manufactured tobacco when it shall be sold or removed, and the government cannot enforce the payment of such tax by the manufacturer until the tobacco shall be actually sold or removed, the manufacturer may lawfully pay the tax on it, as sold or removed, although it is not sold or removed. Of course, if he may do so at all, he may do so in view of the coming into operation of a higher tax on the article, and thus secure an advantage over other manufacturers, in respect of tobacco in fact sold or removed after the coming into operation of the higher tax. In this case, the claimant made a false representation to the government. He returned the tobacco as sold when it was not sold. The return was sworn to as true when it was not true; the

tax was received on the faith of the representation that the tobacco had been sold; the tax could not accrue until the tobacco had been sold or removed; an increased tax of ten cents a pound was to go into effect the next day; and it is seriously contended that this was a lawful and honest transaction, that the claimant was only waiving and dispensing with a restriction that was for his benefit and convenience, that, if he chose to pay the tax without selling or removing the tobacco, the government has no cause of complaint, and that there was nothing in the transaction showing an intent to defraud the government. No principle that has ever been applied to the interpretation of a revenue statute sanctions this doctrine. There is a mutuality in the provisions for taxation. The government can enforce the tax only under certain circumstances. The non-payment of it is unlawful only when those circumstances exist. E converso, the payment of it is lawful only, when those circumstances exist. Otherwise, the claimant would have had a right to compel the, officers of the government to receive the tax although the tobacco had not been sold or removed. He did not, however, claim any such right at the time. He falsely represented that the tax had in fact accrued because the tobacco had been sold. He paid the money on that false pretence. There was no power in the collector to receive the tax, except as a tax on tobacco sold. If the tobacco had been sold afterwards, at a time when the tax on it was thirty-five cents a pound, the government could not have been prevented from collecting the additional ten cents a pound tax on it, by the fact that the twenty-five cents a pound had been received on it by the collector, on the false representation that it had been sold before that amount had been paid on it.

The course pursued by the claimant in regard to this Orinoco tobacco was not warranted by any statute in force at the time of the transactions of March, 1865. The 70th section of the act of July 13, 1866 (14 Stat. 173), was enacted long afterwards. This Orinoco tobacco was in the possession of the claimant on the 1st of August, 1866, when that act took effect, but the duty imposed on it by former acts had not been paid, within the meaning of such 70th section. It was, therefore, to be deemed to have been manufactured on or after August 1, 1866. In the special sense in which the word "imposed" is used in the 70th section, in connection with the words "not having been paid," the tax may properly be said not to have been "imposed" in such special sense, by the 1st of August, 1866. The provision means, that, where the tax, declared by the former act to be collectable, has been paid when enforceable and payable, the taxable articles in the hands of a manufacturer on the 1st of August, 1866, on which such tax has so been paid, shall not be deemed to have been manufactured on or after the 1st of August, 1866; but, otherwise, they shall. In this sense, the word "imposed" may properly be regarded as having a different meaning, in the phrase, "the duty imposed by any such former act not having been paid," from that which it has in the 48th section of the act of June 30, 1864, where it is used merely in the phrase, "imposed by the provisions of law," without any reference to the payment of the tax or to the time when it becomes payable. The succeeding provision in the 70th section of the act of 1866, to the effect, that "whenever, by the terms of this act, a duty is imposed upon any articles, goods, wares, or merchandise, manufactured or produced, upon which no duty was imposed by either of said former acts, it shall apply to such as were manufactured or produced, and not removed from the place of manufacture or production, on the day when this act takes effect," shows the intention of congress in respect to the whole subject. It was, that where manufactured articles were taxable by former laws, and the taxes had accrued and been paid on them, they should not be taxable under the new law; that where they were not taxable by former laws, they should, if taxable by the new law, be so taxable, although manufactured before the new law went into effect, provided they were not removed from the place of their manufacture at the time the new law went into effect; that where accrued taxes had been paid on manufactured articles taxable by the former laws, such articles should not be regarded as manufactured under the new law; and that where manufactured articles not taxable by the former laws had been removed from the place of their manufacture, they should not be regarded as manufactured under the new law.

I see, therefore, no error in the instruction to the jury that it was illegal for the claimant to return the Orinoco tobacco for tax, in March, 1865, under the circumstances set forth in the bill of exceptions, and no error in instructing them that they could infer from the transactions in respect to such tobacco an intent to defraud the revenue thereby, especially in view of the fact, that the court, in compliance with the fourth prayer of the claimant, instructed the jury that the existence of a fraudulent intent in the mind of the claimant, at the time of making return of this tobacco, in March, 1865, would not of itself justify them in finding the existence of a fraudulent intent on his part in respect to the property in suit, and that the court, in compliance with the fifth prayer of the claimant, instructed the jury that the commission of a fraudulent act by the claimant in 1865, in respect to property then in his possession, was not, alone, unless supported by other evidence, sufficient to warrant them in finding the existence of a fraudulent intent on his part in regard to the property in

suit, and that the court, in compliance with the third prayer of the claimant, instructed the jury that fraudulent intent and fraudulent acts long prior to the time of the seizure of the property in suit, would not warrant a verdict of condemnation, unless supported by evidence of fraudulent intent or fraudulent acts at a period nearly coincident with the time of seizure, and that, if, for the ten months next prior to the seizure, the claimant properly made returns and paid taxes upon his manufactures, the jury might fairly infer therefrom a discontinuance of any fraudulent intent which he might have had previously.

The seventh ground advanced for a new trial is, that the court erred "in instructing the jury that, because the claimant did not keep in book form a separate account of the tobacco manufactured by him in 1867 and 1868, he committed a violation of law from which the jury could infer an intent to sell the manufactured tobacco seized in this case without paying the taxes that might be due thereon, &c." It is admitted, by the claimant, that the 90th section of the act of June 30, 1864, as amended by the 9th section of the act of July 13, 1866 (14 Stat. 124), provides, that every tobacco manufacturer shall keep in book form an accurate account of the quantity of tobacco he manufactures, and shall return a sworn inventory every year of the quantity of tobacco held or owned by him on the 1st day of January in such year, setting forth the various kinds of articles manufactured by him separately from those purchased by him, and shall return monthly a sworn abstract of his purchases, sales and removals. The section goes on to provide, that, in case of refusal or neglect to return the inventory, or the abstract, or to keep the account, the manufacturer shall forfeit $500, to be recovered, with costs of suit. It is contended, that because this penalty is imposed for a neglect to keep the account in book form of manufactured tobacco, therefore, the fact of such neglect cannot be resorted to as collateral evidence from which to infer an intent to defraud, within the 48th section, in respect to the property in suit; and that, because the neglect to keep such an account is not an offence of the same class or character with the offence sought to be established under the 48th section, it cannot be resorted to as collateral evidence, in regard to an intent respecting the property in suit. The court charged, that the claimant violated the law in not keeping an account of goods manufactured by him, and that the keeping of such account was necessary in order to enable him truly to make up the annual inventory required to be returned. This neglect in keeping the account, in connection with certain alleged discrepancies between the inventories for 1867 and 1868 and the monthly returns, and with the transactions in regard to the Orinoco tobacco, and with the accumulation in the hands of the claimant of a large quantity of tax-paid tobacco manufactured by him, which had never been sold or removed, were submitted to the jury as circumstances which, if proved, warranted the inference of an intent throughout, on the part of the claimant, not to deal honestly with the government, but to violate the law, and also the further inference that he had a fraudulent intent in regard to the goods in suit. Under the rule before stated in regard to what is proper evidence on the question of intent, I see no error in these instructions. All the unlawful acts and omissions of the claimant as a manufacturer of tobacco, in the discharge of his duties as such towards the government under the internal revenue laws, were proper evidence to be taken into consideration by the jury, and if they believed, from the evidence, that, by such acts and omissions, he intended to defraud the government, they had a right to infer a like intent in regard to the property in suit. The instructions throughout proceeded upon the express statement to the jury that unlawful acts and omissions were nothing, unless the jury believed that there was in them an intent to defraud.

The fact of the imposition of a penalty for the mere neglect to keep the account, without any intent to defraud, cannot have the effect to remove from consideration the intent in a neglect, if such intent was one to defraud; and an intent to defraud in neglecting to keep an account of goods manufactured, is an intent of no different quality, class or character from an intent to defraud in selling or removing manufactured goods without paying the taxes on them.

The eighth ground for a new trial is, that the court erred "in instructing the jury that it was illegal for the claimant to return for tax the goods removed from his manufactory to his retail department, before such goods had been actually sold." The instruction was, that it was unlawful for the claimant to return for tax, on a certain day, a quantity of tobacco manufactured by him and not sold or removed from his premises, and then take it into his retail department on the same premises, and sell it by retail there over his retail counter, without keeping any record of such sales, and without returning any abstract of such sales. It was shown that the claimant had done this. This instruction involves the same question before considered in regard to the right of the claimant to pay taxes at his pleasure on masses of tobacco manufactured by him and not sold or removed; and the further question of his right to sell tobacco manufactured by him, and not before sold or removed, and to omit any record or return of it as sold when it was in fact sold, because he had previously falsely returned it as sold or removed. In this connection, the court instructed the jury that, if they should believe that the mode of returning for taxation the goods sold over the retail counter, by returning them at the

time they were transferred to such retail counter, was adopted for the convenience of the claimant, and used without any fraudulent intent, in the business of the claimant, as a manufacturer, such fact furnished no evidence in support of a verdict of condemnation in this case; that the mere fact that what the claimant did was unlawful amounted to nothing; that if, it being so unlawful, the jury believed there was a fraudulent intent in it, it was to be taken into consideration; and that, if the jury believed there was no fraudulent intent in it, it was not to be taken into consideration. It appears, by the bill of exceptions, that the government gave evidence tending to prove that, during the period from August 1, 1866, to January 1, 1868, large quantities of manufactured tobacco were sold and removed from his factory by the claimant, without due return thereof for taxation and payment of the taxes thereon, as required by law. In view of this fact, and of the neglect of the claimant to keep or return any account of the sales of the goods so removed to his retail department, as sales therein, and of the untruth of his returns, returning, as sold or removed, goods which were not sold and were not removed from his premises, or, in the sense of the law, from the place, street or number where his manufacturing of them was carried on, and of the opportunities for fraud afforded by the course adopted by him, it was for the jury to say what was the intent of the claimant in adopting such course, as bearing on his intent in reference to the goods in suit.

I have reviewed this case at great length because of the large amount of property involved in it, its importance to the parties, and the earnestness with which the grounds urged for a new trial were pressed upon me by the learned counsel for the claimant. But I am unable to see that any error was committed in any of the particulars urged, and, therefore, the motion must be denied.

[A motion in arrest of judgment was also overruled. Case No. 16,106a. Upon appeal the judgment was affirmed by unreported decisions of the circuit court. See Id. 16,104, 16,104a.]